Brent V. Manning, Esq., 2075
Sean A. Monson, Esq., 7261
Manning Curtis Bradshaw & Bednar LLC
Newhouse Building, Third Floor
10 Exchange Place
Salt Lake City, Utah 84111
Telephone: (801) 363-5678

Attorneys for Defendant, Melaleuca, Inc.

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| **KAREN M. COOK and HOMER J. COOK,**<br><br>Plaintiffs,<br><br>- vs-<br><br>**MELALEUCA, INC., and JOHN and JANE DOES 1-5,**<br><br>Defendants, | **NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT (DIVERSITY OF CITIZENSHIP)**<br><br>Case No.<br><br>Judge<br><br>**1:02CV000366**<br><br>State Court Action:<br>Civil No.: 010700553<br>Judge Darwin C. Hansen |

TO THE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH:

PLEASE TAKE NOTICE that Defendant Melaleuca, Inc. (hereinafter "Defendant") hereby removes the above-entitled action from the Second Judicial District Court in and for Davis County, State of Utah to the United States District Court for the District of Utah pursuant to 28 U.S.C. §§ 1332, 1441(a) and (b) and 1446 (a), (b) and (d). This removal is based upon the existence of diversity of citizenship. 28 U.S.C. § 1332. In support of this Notice of Removal, Defendant states the following:

1. The Complaint herein is entitled *Karen M. Cook and Homer J. Cook v. Melaleuca, Inc.*, designated Case No. 010700553 by the state court (hereinafter "Complaint"). Said Complaint was filed in the Second Judicial District Court in and for Davis County, State of Utah. The Summons and Complaint were served on and received by Defendant on March 5, 2002.

2. Pursuant to 28 U.S.C. § 1446(a), copies of the Summons and Complaint served upon Defendant are attached hereto as Exhibit A and are incorporated herein by reference. No other process, pleadings or orders have been served upon or otherwise received by Defendant.

3. Defendant was served with or otherwise received the Summons and Complaint and thereby first received notice of this case on March 5, 2002. Therefore, this Notice of Removal is filed within thirty (30) days after receipt of the Summons and Complaint by Defendant as required by 28 U.S.C. § 1446(b).

4.  A copy of this Notice of Removal will be filed with the Clerk of the Second Judicial District Court in and for Davis County, State of Utah and served upon all adverse parties as required by 28 U.S.C. § 1446(d).

5.  Plaintiffs' Complaint alleges that Plaintiff Karen Cook was injured by a product sold by Defendant. Based on the nature of the injuries claimed, it is anticipated that more than $75,000 will be at issue in this case. Plaintiffs' Complaint further alleges that they are citizens of Utah. Defendant is an Idaho corporation and has its principal place of business in Idaho. In as much as this action arises between citizens of two different states, and more than $75,000 is anticipated to be at issue, this case is within this Court's original jurisdiction pursuant to 28 U.S.C. § 1332 and is removable pursuant to 28 U.S.C. § 1441 (a) and (b).

WHEREFORE, Defendant prays that the above action now pending against it in the Second Judicial District Court in and for Davis County, State of Utah be removed therefrom to this Court.

DATED this 27th day of March, 2002.

> MANNING CURTIS BRADSHAW
> & BEDNAR LLC
>
> _____
> Brent V. Manning
> Sean A. Monson
> Attorneys for Defendant, Melaleuca, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on the ___27TH___ day of March, 2002, I caused to be served a true and correct copy of the foregoing, by mail, postage prepaid to:

>Robert B. Sykes
>Darren A. Davis
>Robert B. Sykes & Associates, P.C.
>311 South State Street, #240
>Salt Lake City, Utah 84111


_____Stuart L. Hall_____

SERVED UPON _Melaleuca_
20021346  LEAVING WITH _Patty Nield_
AT _3910 South Yellowst[one]_
DATE & TIME _3-5-2002_
OFFICER _B. Mill 365_

Robert B. Sykes (#3180)
Cory B Mattson (#9292)
**ROBERT B. SYKES & ASSOCIATES, P.C.**
311 South State Street, #240
Salt Lake City, Utah 84111
Telephone: (801) 533-0222
*Attorneys for Plaintiffs*

## SECOND JUDICIAL DISTRICT COURT OF DAVIS COUNTY
## STATE OF UTAH

| | |
|---|---|
| KAREN M. COOK and<br>HOMER J. COOK,<br><br>Plaintiffs,<br><br>v.<br><br>MELALEUCA, INC., and<br>JOHN and JANE DOES 1-5,<br><br>Defendants. | **SUMMONS**<br><br><br><br><br>Civil No. 010700553<br><br>Judge Darwin C. Hansen |

TO:  Melaleuca, Inc.
     c/o Frank L. Vandersloot
       or Other Registered Agent
     3910 S. Yellowstone Hwy.
     Idaho Falls, Idaho 83402

THE STATE OF UTAH TO THE ABOVE-NAMED DEFENDANT:

You are hereby summoned and required to file an Answer in writing to the attached Complaint with the Clerk of the above-entitled Court and to serve upon plaintiffs' attorney at the above address, a copy of said Answer within thirty (30) days after service of this Summons upon you.

If you fail to do so, judgment by default will be taken against you for the relief demanded in said Complaint which has been filed with the Clerk of the Court, and a copy of which is hereto attached and is herewith served upon you.

DATED this 4th day of March, 2002.

_____
CORY B MATTSON, Attorney for Plaintiffs

Q:\CLIENT\1744\P\Summons

Robert B. Sykes (#3180)
Darren A. Davis (#9247)
**ROBERT B. SYKES & ASSOCIATES, P.C.**
311 South State Street, #240
Salt Lake City, Utah 84111
Telephone: (801) 533-0222
Attorneys for Plaintiffs

## SECOND JUDICIAL DISTRICT COURT OF DAVIS COUNTY

### STATE OF UTAH

| | |
|---|---|
| KAREN M. COOK and HOMER J. COOK, <br><br> Plaintiffs, <br><br> v. <br><br> MELALEUCA, INC., and JOHN and JANE DOES 1-5, <br><br> Defendants. | **COMPLAINT** <br><br> – Jury Demanded– <br><br><br><br><br> Civil No. 010700553 <br><br> Judge Darwin C. Hansen |

Plaintiffs complain and allege for cause of action against defendants as follows:

### JURISDICTION, VENUE AND PARTIES

1. The acts upon which this Complaint is based occurred entirely or substantially in Davis County, State of Utah.

2. The amount at issue exceeds $20,000, exclusive of costs.

3. This Court has jurisdiction over this case pursuant to Article VIII, § 5 of the Utah Constitution and Utah Code Ann., 1953 § 78-3-4.

4. Plaintiff Karen M. Cook is an individual who resides in Davis County, Utah.

5. Plaintiff Homer J. Cook is spouse to Karen M. Cook and is also a resident of Davis County, Utah.

6. Melaleuca, Inc., is believed to be a business incorporated under the laws of the state of Idaho and is subject to jurisdiction under the Utah Long Arm Statute, Utah Code Ann. § 78-27-22.

7. Defendant is subject to the jurisdiction of the Utah District Court, because it contracted to supply services and/or products in Utah and caused a tortious injury within the state of Utah. Jurisdiction is therefore proper under Utah Code Ann. § 78-27-24(2)(3). Venue is proper in Davis County because said defendant does business in Davis County.

8. John and Jane Does 1-5 are additional defendants who may be assemblers, manufacturers, or sellers of the subject medication whose domicile is currently unknown. These defendants will be added later once their identity is known. As manufacturers or sellers of a defective product, these defendants are subject to the jurisdiction of this Court.

## FACTUAL ALLEGATIONS

9. On or around February 29, 2000, plaintiff Karen Cook purchased a cold, allergy and sinus medication named CounterAct® from Melaleuca, Inc.

10. Plaintiff purchased said medication to help alleviate allergy symptoms that she suffers from time to time.

11. To place this order, plaintiff telephoned Melaleuca, Inc., in Idaho Falls, Idaho, via their 1-800 number and communicated the product she desired to a company representative. The CounterAct® cold tablets were only one of several products plaintiff ordered from Melaleuca, Inc., that day.

12. Having received the telephone order, Melaleuca assigned plaintiff a customer number, recorded plaintiff's desired purchases on a company invoice, and mailed a copy of invoice and all said products to plaintiff in Layton, Utah.

13. CounterAct® had one or more dangerous properties, characteristics, or defects which could not be observed by a member of the public using ordinary care, which were created during the design and/or manufacturing process, to wit, CounterAct® contained 25 mg per pill of the drug Phenylpropanolamine, commonly referred to as PPA.

14. On November 6, 2000, the Food and Drug Administration issued a public health advisory regarding Phenylpropanolamine (PPA), which was widely known to have been used as a decongestant and appetite suppressants. The Food and Drug Administration issued this warning because researchers discovered a significant link between the use of said drug and the development of strokes in some people. That advisory indicated that all persons who received this warning cease the use of any medications that contain PPA. Consumers were advised to discard them and ask their

physicians for safe alternative medications. The FDA additionally asked all drug companies to stop selling products containing PPA.

15. There were insufficient or inadequate instructions and warnings about inclusion of PPA attached to the medication CounterAct®, which was sold by Melaleuca, Inc.

16. There were insufficient or inadequate instructions and warnings about the consumption of medicines containing PPA and the significant risk that consumption of said drug causes strokes in some people.

17. These manufacturing design defects were easily preventable and avoidable by the defendant if they had used careful manufacturing techniques, design and warning criteria.

18. As of at least November 6, 2000, Melaleuca knew or should have known of the Food and Drug Administration's public health advisory warning regarding the use of medications containing Phenylpropanolamine (PPA).

19. Additionally, Melaleuca knew or should have known that said warnings linked the use of this medication with the development of strokes in some people.

20. Melaleuca could easily have warned its customers of the dangers of PPA as early as November 7, 2000.

21. Plaintiff Karen M. Cook received no warning regarding the use of PPA from Melaleuca. On May 9, 2001, because of allergy symptoms, plaintiff took one of the CounterAct® tablets.

22. On Friday, May 11, 2001, with the pollen count being very high, plaintiff took another CounterAct® tablet. Though this dosage was well within CounterAct®'s prescribed limits of one capsule every 4-6 hours, plaintiff Karen Cook had never before taken more than one tablet in a week.

23. Shortly after taking a CounterAct® tablet on Friday, May 11, 2001, Karen began to experience an elevated temperature. She became dizzy and her vision became impaired. Concerned with the onset of these symptoms, plaintiff Karen Cook telephoned her son Johnnie Vance Cook, M.D., a family practitioner, and requested that he see her concerning her condition.

24. On Friday, May 11, 2001, Dr. Cook stayed with Karen during the better part of the afternoon to monitor her condition. He instructed her to take three aspirin and stated that if her condition worsened she would need to be admitted at a local hospital.

25. The next day she awoke feeling considerably worse than she had the day before. She noticed that her left side had become considerably weaker than her right side. As she arose to get out of bed, she was in fact too weak to self ambulate and collapsed back into her bed. Thereafter, she telephoned Dr. Cook, and he made arrangements to admit her to McKay Dee Hospital in Ogden, Utah.

26.  That same morning she was admitted to McKay Dee Hospital where her condition was monitored. At the hospital, plaintiff noticed that her left-side partial paralysis had indeed increased. In fact, she had difficulty walking from the car to her hospital room as her left foot dragged in an uncontrollable manner.

27.  Once admitted, Karen Cook's condition was monitored. However, at that time, it was not yet determined that she had suffered a stroke.

28.  On Sunday, May 13, 2001, plaintiff was released from McKay Dee Hospital. She returned home with the instruction that should her condition change or worsen in any way, she was to report again to the neurological staff at McKay Dee Hospital for further consultation and monitoring.

29.  On May 14, 2001, plaintiff awoke with greatly increased left side paralysis. She noted that her speech was slurred, and suffered a terrible migraine-like headache. Her vision was impaired to such a degree that the left side of her field of view was significantly blurred and impaired.

30.  At McKay Dee Hospital she under went a CT head scan with contrast which was negative. However, an MRI scan of her brain revealed that she had in fact suffered from a stroke.

31.  Because this particular form of stroke involved a constricting of the blood vessel in the brain, doctors were left to simply monitor her condition and await for the constricted blood vessel to return to its former shape and size.

32. Karen Cook continues to suffer partial paralysis on her left side and other debilitating effects due to the stroke.

33. Had Melaleuca either issued a recall of their product CounterAct® or issued a warning of the defective nature of their product, plaintiff Karen Cook would not have taken a dose of CounterAct® on Wednesday, May 9, 2001, and again on Friday, May 11, 2001.

34. The medication CounterAct®, which contains Phenylpropanolamine (PPA), was unreasonably dangerous to the ordinary consumer, which danger was not open and obvious.

35. As a direct and proximate result of this incident, plaintiffs have been damaged including but not limited to;

    (a) having suffered a preventable stroke;

    (b) left-side arm and leg palsy;

    (c) blurred vision;

    (d) dizziness;

    (e) loss of cognitive ability;

    (f) extreme headaches;

    (g) medical expenses;

    (h) loss of consortium injuries; and

    (i) other injuries not listed but proximately caused by the defective product.

## FIRST CAUSE OF ACTION

### – Negligence –

36. Plaintiffs incorporate by reference all numbered allegations above.

37. Defendants had a duty to use reasonable care in designing, selecting materials, manufacturing, constructing, testing, and/or inspecting subject medication to determine that it was in a condition fit for its intended purpose.

38. Defendants breached their duty of reasonable care and that they failed to design, select materials, manufacturer, construct, test and/or expect the subject medication in a reasonable manner and to determine that it was in a condition fit for its intended purpose.

39. Defendants were negligent in designing, testing, manufacturing, assembling, marketing and selling the above-described medication by using inadequate and improper construction methods and/or materials.

40. Reasonable means existed at the time of manufacture and sale of the subject medication to substantially reduce or eliminate the risks of stroke due to the inclusion of the drug PPA, but were not used by defendants.

41. The medication lacked adequate and sufficient warnings and instructions about the risks, dangers and harms presented by use of the medication and reasonable means to reduce such risks, dangers and harms, including but not limited to a warning of the potential for strokes in some patients, and a warning not to use the

-8-

medication after the Food and Drug Administration had issued a public health advisory regarding such harms.

42. Defendants likewise had a duty to inform plaintiff by a recall notice or otherwise that their product had been withdrawn from the market due to the inclusion of PPA. Had plaintiff received such a recall notice, she would have discarded the remainder of the product, and it would never have been taken six months later in May, 2001.

43. As a direct and proximate result of said negligence, the subject medication caused a stroke in plaintiff Karen Cook, causing injuries complained of herein.

44. Defendants are liable to plaintiffs for damages, alleged above, stemming from their negligence, and such categories and amounts to be proven at trial.

## SECOND CAUSE OF ACTION

– Strict Liability –

45. Plaintiffs incorporate by reference all numbered paragraphs above.

46. At all times relevant, the subject medication was unreasonably dangerous and unsafe for its intended use by reason of the dangerous characteristics and defects set forth in the paragraphs above. The medication was expected to and did reach the plaintiff without substantial change effecting its condition, or the medication failed to perform as safely as an ordinary consumer would expect when used as indicated or in

-9-

a manner reasonably foreseeable by defendant or the risk of danger and the design out weighed the benefits.

47. CounterAct®'s defective condition was not observable by plaintiffs, and Karen Cook did not know or contemplate that it was defective and unreasonably dangerous.

48. As a direct and proximate result of said defects, the subject medication was caused or allowed to contain, without warning, PPA, causing the injuries complained of herein.

49. Plaintiffs have been damaged as alleged above, and should be awarded such damage as are proven at trial.

## THIRD CAUSE OF ACTION

### –Breach of Implied Warranty of Merchantability –

50. Plaintiffs incorporate by reference all numbered paragraphs above.

51. Defendants, through their conduct impliedly warrantied the subject medication was of merchantable quality and was in a fit, safe, and proper condition for the ordinary uses for which it was designed and used.

52. The subject medication which was manufactured and sold by defendants and used by plaintiff was not of merchantable quality. Rather, it was unfit, unsafe, and unusable for the purposes for which it was intended.

53. The condition of the medication constituted a breach of defendants' implied warranty of merchantability, which breach directly and proximately caused plaintiff's injuries, as alleged above.

54. Based on the foregoing, plaintiffs are entitled to recover from defendants damages in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

### –Breach of Implied Warranty of Fitness –

55. Plaintiffs incorporate by reference all the numbered allegations above.

56. Defendants impliedly warrantied that the subject medication was fit for the purpose for which it was designed and that it was safe and suitable product to be used for the purposes for which it was sold.

57. Plaintiff consumed the medication for its intended use and for no other use.

58. The subject medication was not fit for its intended purpose. Rather, it was unsafe, unfit, and unsuitable for the purposes for which it was intended.

59. Such a defective condition constituted a breach of defendants' implied warranty of fitness, which breached directly and proximately caused plaintiffs' injuries as alleged above.

-11-

60. Based on the foregoing, plaintiffs are entitled to recover from defendants damages in a reasonable amount to be determined at trial.

## FIFTH CAUSE OF ACTION

### – Punitive Damages –

61. Plaintiffs incorporate by reference all numbered paragraphs above.

62. Defendants' actions in failing to notify their customers of a dangerous defect, and in selling and allowing an unreasonably unsafe and defective medication, CounterAct®, to be used by American consumers, including plaintiffs, was callous, reckless and in knowing and reckless disregard to the safety of others. The medication in question was extremely unsafe and unusually defective, which was known or should have reasonably been known to defendants by May of 2001. The imposition of punitive damages is therefore justified and serves to properly censure defendants for their conduct.

## JURY DEMAND

63. Plaintiffs request a jury trial of all the issues in this case.

## REQUEST FOR RELIEF

WHEREFORE, plaintiffs demand judgment against defendants as follows:

1. For special damages for each plaintiff in sums to be proven at trial.

2. For a judgment of general damages against defendants, in a reasonable amount to be determined at trial.

3. For past incidental expenses in an amount to be proven at trial.

4. For a loss of consortium damages, in an amount to be proven at trial.

5. For other economic and out-of-pocket damages in an amount to be proven at trial.

6. For prejudgment interest on the damages assessed by the verdict of the jury, pursuant to Utah Code Ann. § 78-27-44.

7. For costs of Court.

8. For such other and further relief as the Court deems proper and just.

DATED this 5th day of November, 2001.

_____
ROBERT B. SYKES
Attorney for Plaintiffs

Q:\CLIENT\174\VPComplaint.01

-13-